The next case on our calendar is McGuire-Welch v. House of the Good Shepherd. Counsel would step forward. May it please the court. Kathleen McGuire-Welch served as the CSE chair at the House of Good Shepherd Tilton School for 23 years. After Shannon Perry was hired in 2011, it became common knowledge that she was to be terminated. At that same time, she made an inquiry to the plaintiff about when she was going to retire. My client told her that she didn't plan on retiring for six or seven years. It was also known that my client had certain roles and responsibilities with respect to being the chair of the committee on special education. Following those statements, when Ms. Perry became in charge, my client was removed from her typical duties. She received nasty phone calls. Her role was restricted in terms of who she could communicate with and whom she could not communicate with. She was told not to investigate incidents on the bus that had to be reported to the school districts. Was the evidence that this all related or was because of her age? It was because of her age in the aggregate, Your Honor, because what the court did is it noted that all of the factors have to be considered collectively. Then it went ahead and did the analysis individually and disputed each one of the items that collectively, the circumstantial evidence, as you know, there... Was there not evidence that she had performance issues relating to the corrective action plan? The corrective action plan, there's no evidence even that she knew about it. In fact, she testifies that she did not know about it. It was developed without the plaintiff. If you take a look at Zig Malowiecki's affidavit, A40 at the record, paragraphs 13 and 14. Whether or not she knew about the plan itself, wasn't there evidence that she was in connection with the school's efforts to comply with the plan, not doing her tasks? She wasn't informed of them. She was not informed of the tasks, she was not invited to the meeting, she wasn't part of the committee. If you look at paragraph 13 and 14 of Zig Malowiecki's affirmation, she wasn't even involved in the process to complete the corrective action plan. She's testified at A152, she was not even made aware of the requirement to complete the corrective action plan. And then she was held responsible for its incompletion. If you take a look at her earlier evaluation, she was identified by Mr. Williams as a strong advocate for children at the record A670. And it was stated then in 2011. It's amazing she has not become totally overwhelmed, the amount of work that was placed on her at that time. Then she was locked out of her job by Perry, she wasn't invited to sit in at all on the SED meetings, wasn't sent to trainings. If you take a look at A291, it's clear that what happened was, is they attended these meetings with the state, they attended these meetings with the state, and then in March or April of 2013 said, why haven't you gotten this done? She couldn't comply if she didn't know about it. Now, she also was in a situation where, and here's what the district court did in part, and I wanted to make a note of this, it relied on this Gettler versus Cornell case, Judge Bryant. That was a report and recommendation. And what they did is, he took that stray remark, as he called it, when are you going to retire remark, and he said that a stray remark in the absence of other evidence, okay, that, sure, that could become a stray remark, but collectively this occurs over this period of time once Perry takes the position as her lock, they gave her, or the employee counseling. The report and recommendation by Magistrate Judge Fox, which was adopted by Judge Bryant, talks about the fact that there was insubordination, there was a long period of time that this employee was not compliant with anything. You don't have that here. In fact, the record is completely absent of any meeting between Ms. Perry and my client in order to counsel her and say, you need to get this done or you need to do this, and if you don't, we're going to terminate your employment. And it appears that they didn't even intend to terminate her employment because the first draft evaluation did not include that recommendation, and it was sent to her supposedly erroneously, and it was over an 18-month period. The Gettler case, that decision, talks about a stray remark in the absence of any other evidence. And what you've got here is you've got this collection of circumstantial evidence. I admit that there's no direct evidence. It is circumstantial, that's true. But on the one hand, the dis- It's not even admissible. I mean, her claims about what other people told her, to the extent that they are not acting for the school district, I mean, what was common knowledge, as you put it, is not, I don't see how you're going to get, how you offered that in an admissible form. I believe that the statements of the employees and agents of the employer are admissible under the federal rules. And there are other indicia of reliability- For example, the retire comment, I think, is made by people who are relaying that they heard Ms. Perry say that. Is that correct? No. Ms. Perry actually asked that of my client. That was a direct communication. What she heard about her being terminated was through other employees. But the court takes that, on the one hand, it says, well, the remark about when are you going to retire is too much information. On the other hand, her advocacy for the student that wasn't able to take the test, who she communicated with Mary Palmer, who came back and reported to her from Shannon Perry, no, she can't take the test. She was terminated immediately thereafter. Can you explain to me why an employer in that case, and I'm sympathetic to this, but why an employer would view that complaint about the student not being able to take the test as a form of opposition to disability discrimination? Because she said that it was her right under the law, and Perry had made a decision. And then, you remember, the teacher came to my client and was very angry because the teacher had prepped the student for the test. And she said, it's not my decision. Perry won't let her take the test. So even though that's close in time, the court discounted that, and saying that that wasn't relevant. And then . . . Well, it was that it wasn't a protected act. It wasn't sufficient proof of a protected activity. And that's, I think, what we're asking you is, how is a teacher, Ms. Palmer, coming and saying that the student's not going to be allowed to take the test, and your client saying, right, that was Ms. Perry's decision, how is that an act of advocacy that somehow is protected? I think that Mary Palmer came to her and said that she wasn't going to take the test. My client said, no, she has the right to take the test. Mary Palmer says, I'll tell Perry. And then comes back and says, Perry says, no. Did she say . . . I didn't see that she said that she's got the right to take the test as a matter of the ADA or the human rights law. Under special education law. Her advocacy for a student with special needs. Right. Yeah. And I've reserved time for rebuttal. All right. I know you want to reserve time. Thank you. Good morning, Your Honors. Rob Thorpe from Barclay-Damon, representing the defendant's appellate in this case. May it please the Court. Just addressing some of the arguments Plaintiff's Counsel just raised, there is no dispute, and she can't argue, genuinely, that plaintiffs did not know about the corrective action plan. There are e-mails in the record from as early as January 2013, and I'll give you the pages here. Well, she, at A-152, disclaims knowledge of the correction action plan. It's unbelievable. You say there's no dispute. It's obviously a dispute, because she says never knew about it. Your Honor, there are at least two e-mails. I think there's more. A-82, A-83, in which Zig Malowiecki, a defendant in this case, e-mails plaintiffs and others, inviting them to a meeting on January 25th During the deposition of the plaintiff, was she shown these e-mails? I don't think so. Your Honor, I don't recall if she was. That's one, A-82, A-83, a January 11th e-mail. Shortly after the meeting, she says she was intentionally denied attendance. There's that e-mail, and then there's another, that same day, from defendant Shannon Perry, sending plaintiff a copy of the corrective action plan. Within that corrective action plan are the tasks specifically assigned to plaintiff and others that plaintiff failed to do and resulted in a debacle in the end of April, early May, for the school to avoid jeopardizing their educational certification. Just so that we're clear as to this, you offer the failure of the corrective action plan as the nondiscriminatory reason for her termination, which then takes us to step three, and the plaintiff has to adduce evidence that would support a pretext finding. She does that by saying to herself, by proffering her own denials of any knowledge of the pretext plan, and you counter that then with these questions. I'm not asking for evidence to carry her burden. I'm just trying to figure out where we are in the argument. Correct, Your Honor. It's almost impossible for her to take the position, she may have forgotten in her deposition, but it's almost impossible to take the position that she didn't know about this corrective action plan. When the entire... It's not a question of whether she forgot it in the deposition, it's a question of whether she was asked the question. Did you ask the question, or did you decide to ask the question? Your Honor, I was there. I did not take her deposition. I honestly don't recall. I'd have to look back at the record to see if she was specifically asked. But whether she was asked or not, I don't think that has any indication of whether... What we're concerned about here is whether there are material issues of fact from which a jury could conclude the outcome that she wishes. And we're not deciding the case, we're just deciding whether it should go forward to a jury. I understand, Your Honor. And whether that's a disputed issue of fact, I don't think that's a genuine issue of material fact that warrants a trial, considering there is documentary evidence directly rebutting whether she knew or did not know about that. She says, are you aware that there was a requirement to complete a corrective action plan? Answer, no. Question, you weren't aware of that, then there's an objection, and the lawyer says, ultimately I'm content with the answer. Thank you for correcting my argument. That's exactly right. So she did testify in her deposition that she was unaware of it. That is completely contradicted by the evidence in this record. Is there any other argument? Is it your position that to challenge the grant of summary judgment, she has to come forward with something that explains how she doesn't know it in light of emails sent to her? I think that's true, and I also think... Either say, you know, I never got those emails or whatever, but you have now adduced emails providing her with this information, you say, and you're saying that now that creates a burden on her. She can't just rely on her blanket denial. She has to say something as to why she doesn't know what the emails purportedly told her. I completely agree. And then she has to take it to the next step to prove that whatever actions happened after that were the result of her age or her advocacy on behalf of disabled students. I thought that another argument you might have made, but I haven't heard it, is that setting aside the knowledge of her knowledge of the corrective action plan, she still had these duties in connection with the plan. So she may not have known that there was a plan, but she was required to perform certain tasks that she did not do in a timely fashion. That's exactly right. One of those tasks, and where is that in the record? It is outlined specifically in the brief, in the corrective action plan, and also her failure to follow up. Shannon Perry sent her two emails in April saying, there's problems with these ten students, these BIP or IEP reports, problems with these particular students. If NYSED comes in right now, we're in trouble. Fix these, contact the Utica School District, the other local school districts, fix these and get back to me. No response. Ten days later, Shannon Perry sends another email saying, have you made these changes? We're getting near the deadline here. And again, plaintiff failed to do it, which resulted in Shannon Perry, other social workers, and Utica School District team members having to race at the last minute to make all these changes so that they could fax the corrective information to NYSED. So, those arguments are raised in the brief, and her failure to even, part of the problem was her lackadaisical approach, even not even responding to the emails, let alone the fact that she pretends to not know that this corrective action plan was in place. She doesn't respond to the emails or directly. I can explain why she doesn't know about the corrective action plan, but that's another issue. Let me ask you a question about this statement. When do you plan to retire? And I understand that, so this is not the facts of this case necessarily, but what if a supervisor went to a person over 40, so who was protected by the ADEA, and just to that person, and everyone else was under 40, and said, when do you plan to retire? Would that be direct evidence of discrimination under the ADEA? I do not believe it would be, Your Honor. Why not? There's case law cited in our brief, which supports a single stray remark, especially one like this, which is two years prior, just about two years prior to the date she was actually terminated, in and of itself would not be. How old are you, 64, when do you plan to retire? Is that enough? That's a stray remark, but is that enough? A proven remark, other than, I mean, she's relying solely on this affidavit where she says this. No, just go with me on this. Is that enough? I do not believe that's enough, Your Honor, based on the case law cited in our brief. Isolated stray remarks, especially inquiries about a person's plan to retire, has been in Second Circuit cases, district court cases from New York, saying that that alone is not enough, what you're describing, Your Honor. As to the retaliation, there was mention of this student who was denied the right to take a regent's exam. In the record, I don't know if I have the actual page here, A97 and A122, plaintiff, a couple weeks before she's terminated, sends an email to Shannon Perry and others saying this student is in jail and actually can't take the exam for that reason. She's released a few days later, and Shannon Perry determines in her discretion that this student's not in the right frame of mind to take the test. There's, to find in favor of plaintiff's retaliation claim, you have to believe that the student on whose behalf she allegedly advocated was disabled and that the student was being discriminated against because of her disability. You have to believe that her alleged communications with Mary Palmer or Richard Gattano constituted protected activity. Again, these aren't communications with the decision-maker, Zig Malowiecki, or with the supervisor, Shannon Perry. By the way, there's no affidavit, there's no deposition testimony, there's nothing other than what she said with Richard Gattano and Mary Palmer. You also have to believe that either Shannon Perry or Zig Malowiecki were aware of these communications, there's no evidence of that, and then you have to believe that she was terminated because she thought a student should be able to take a regent's exam. It defies logic. The other argument, I see my time's running short, I want to address because I haven't had an opportunity yet. Plaintiff's reliance on the Danzer case is, it's a Second Circuit case from 1998. She raises it substantively for the first time in her reply brief. Her reliance on that case and its progeny is wholly inappropriate. That case was decided a decade before the Supreme Court's decision in Gross v. FBL Financial Services, which, as you know, clarified that the causation standard under the ADEA is but for, rather than the motivating factor. This is true with respect to several cases, the majority of cases relied on by plaintiff in her reply brief, which including Back v. Hastings, Holtz v. Rockefeller, all of which, like Danzer, apply the pre-Gross motivating factor standard. It's also noteworthy that plaintiff concedes in her initial appeal brief that the but-for causation standard governs both her age and retaliation claims in this case, yet again in reply, she relies on cases almost entirely applying an outdated causation standard. I see my time's up. Just one last comment. If an affidavit, like the one submitted by plaintiff in this case, is all it takes to for employers to be able to succeed on a motion in it. So it all turns on whether it's matters she has personal knowledge of. In and of itself, Your Honor, I don't, defendants and She's a competent witness to matters she has personal knowledge of. I agree. And defendants in this case accepted every single allegation and rebutted it with the credible evidence in the record, and I just don't think there is enough there, as a district court found, to survive summary judgment and get to a trial. All right. Thank you. Thank you, Your Honor. Counsel. If you take a look at the record, it a What did your client say to explain e-mails that showed that she did know about the, that she was given information about the plan and its requirements? My recollection is that there were some e-mails that she had never seen before, had no recollection of. There were some that she did. My recollection is different from whether or not she received them. Right. Now, she gets an e-mail that attaches a copy of the plan. So she gets an e-mail that both references the existence of a plan and sends her a copy of it. And as I understand it, this is a plan that, if not complied with, could result in the school losing its state license. So it's no small matter. Now, your client, as I said, is a competent witness to what she has personal knowledge of. But once she's confronted with something that provided her with notice, doesn't she have to explain either that she didn't receive the e-mail or something? And I'm not sure I saw that. What's the explanation? Or how can she persist in that, claiming this is all a pretext because they're now saying she had to comply with requirements she was never told about when they come forward with the documents that show she was told about them? I'd have to consult the record to see how she responded to those specific e-mails. But I understand that. How we have a triable issue of fact, when they come forward with evidence that shows they certainly did tell her about the plan, they say. Okay. They had come forth with evidence that shows that they did not involve her in the plan. That's different. If they told her about the plan and told her she had to satisfy certain requirements and she didn't, and that's the reason for terminating her, you have to show why that's pretext. Right. I think that her first notice was in March of 2013, two months before her termination, six weeks before the compliance plan. If you look at the, if you take a look at the corrective action plan, there's only one item on that chart that she was responsible for. If you take a look at Shannon Perry's affirmation and Zig Malinwiki's affirmation, again, they had the meeting in December, he gives you a list of everybody that was invited, my client's not there. She's the CSE chairperson. If you look at the corrective action plan that was developed by HGS administrators with input from NYSED, he identifies the staff members, including himself, Mr. Perry, the school psychologist, the supervising psychologist, and teachers were invited, but not my client. She has sent emails that tell her to do certain things that are related to the plan by a certain time. Your adversary says she not only doesn't do them, she doesn't respond at all. What's your response to that? I don't know the basis for her not responding to emails. I do not recall them in the record. It's hard to say that an employer is acting for a pretextual reason when they say that an employee who fails to respond to work assignments at all is, cannot be terminated. No, I'm not saying that she can't be terminated. I'm saying that there is a process in place by which that can be done, and that they're stepping outside the normal course. They did an 18-month eval instead of a 12-month eval. They didn't discuss it with her. They didn't give her the notice of termination. It sounds like you might have a breach of contract claim, but a deviation from the procedures doesn't automatically allow you to succeed on a discrimination claim. Not by itself. I agree. But in conjunction with the other evidence here, they replaced her with a 29-year-old woman who had no experience. And when he says that, Shannon says, well, I didn't fire her. Zig Malowiecki fired her. Well, that's not true, because you can see that she makes recommendations for hiring because she interviewed the replacement and made the recommendation for hire by Zig Malowiecki. He may sign off on it, but she's the principal actor. So she shifts her explanation all over there. That but-for-causation standard does not mean that defendants' employers can manufacture poor evaluations, marginalize an employee, target them over a period of a year and a half or two years, and then complain they're not doing their job. I have not heard you contest the fact that on this record there were—forget about her knowledge of the Corrective Action Plan—I have not heard you contest the fact that on this record there were assignments that she was given that she either failed to perform in a timely fashion or never really responded to. I believe that her affidavit addresses them. I'd have to go back and look specifically at the e-mails and the assignments that they say she didn't do. I know there's a segment of notes where she writes that this was done, that was done, this was done. And I know that there was a dispute about whether or not the inaccurate information was coming from a secretary that she was held responsible for. But I think that the point is, from the plaintiff's perspective here and the appellant, is that collectively this stinks. And she knew it. There's a tenor that is appearing over a 23-period of employment, and if they wanted somebody who had experience and somebody who knew how to do the job, they wouldn't be hiring a 29-year-old inexperienced person who just got her degree. We've let you go well over your time.  Thank you, Your Honor. Counsel, we're going to take the matter under advisement.